## Crawford et al. v. Crawford.

October 24, 1950.

Lawrence F. Speckman, Judge.

746

Hagan & Hagan, A. M. Marret for appellants.

Wilbur O. Fields for appellee.

VAN SANT, COMMISSIONER—Affirming.

Appellee and cross-appellant, Blythe M. Crawford filed this action on January 17, 1945 against appellant Margaret E. Crawford, now McCaffrey, for divorce from the bonds of matrimony on the ground of cruel and inhuman treatment. Appellee also asked for a restoration of property acquired by Mrs. Crawford with funds earned by him during the marriage including a parcel of land held in the name of appellant, Basil Hooper, the son of Mrs. Crawford. Appellant, Mrs. Crawford, by answer, specifically denied the allegations of appellee's petition and by counterclaim sought a divorce from bed and board on the grounds of abandonment and cruel and inhuman treatment. The Chancellor granted appellee's prayer for divorce; charged both parties with their own costs; distributed certain personal property and the household furnishings in the residence at 3821 Staebler Avenue to Mrs. Crawford; distributed to appellee certain other personal property; determined that five parcels of land held in the name of Mrs. Crawford, one parcel of land held jointly in the names of appellee and Mrs. Crawford, one parcel of land held in the name of Basil Hooper, and another held jointly in the names of Mrs. Crawford and Basil Hooper were purchased with money earned and supplied by appellee; concluded that appellant, Mrs. Crawford, contributed to the acquisition of the said properties in the amount of $18,000.00; determined that Basil Hooper held the property known as the "coal yard" as trustee for appellee; and ordered the conveyance of the aforementioned properties to appellee, subject to a lien to secure judgment in Mrs. Crawford's favor against appellee in the amount of $18,000.00. The Chancellor dismissed the counterclaim of Mrs. Crawford. Mrs. Crawford and Basil Hooper have appealed from this judgment, and appellee has cross-appealed from the award to Mrs. Crawford of $18,000.00.

Mr. and Mrs. Crawford were married on August 25, 1921. At that time their respective ages were 29 and 34. No children were born of this marriage, but Mrs. Crawford had two sons by a former marriage, Basil Hooper, age 18, and Carl Hooper, age 16. The parties separated late in the year 1944. During the intervening years, Mr. Crawford, with the help and encouragement of his wife engaged in numerous busi-

ness ventures. An estate was jointly created which, at the time this suit was brought, amounted to approximately $50,000.00 in real estate. This is exclusive of property subsequently acquired by Mr. Crawford in Indiana, the value of which likely does not exceed the lien against it.

The marital difficulties of the parties began about 1941 and continued to the time of their separation. On this appeal Mrs. Crawford contends that the proof is not sufficient to support the judgment for a divorce. As in most other instances the testimony on this subject is completely conflicting. We find, however, that there was ample testimony by appellee and his witnesses to the effect that Mrs. Crawford continually used extremely abusive and offensive language toward him, threw dishes and other missiles at him, hit and sprayed him with a hose, and humiliated him in public for the Chancellor to conclude that such acts indicated a settled aversion to appellee and were such as to destroy his peace and happiness. Under these circumstances we are not disposed to disturb the Chancellor's judgment in decreeing the divorce.

Appellant complains of the Chancellor's failure to sustain her objection to testimony introduced by appellee to the effect that Mrs. Crawford was seen in company of Mr. Fred Jackson and was observed to hug and kiss him. Appellant's contention is that such conduct did not amount to lewd or lascivious conduct and therefore did not warrant the granting of an absolute divorce. Such conduct, however, if known to the appellee, definitely tends to show an aversion to him and cruelty such as would permanently destroy his peace and happiness.

Mrs. Crawford's proof as to their marital difficulties tends to show that Mr. Crawford had used abusive language toward her; that he had assaulted her and broken her ribs; that he drank; and that he sought the company of other women. The evidence supporting this contention was contradicted and raises no more than a doubt in our minds concerning the Chancellor's finding, for which reason the judgment will not be disturbed unless the Chancellor erred in the distribution of jointly accumulated properties which question we now will examine.

The greater portion of the twenty-five volumes of testimony deals with the property acquired and either disposed or held by Mr. and Mrs. Crawford during their marriage. A minute recount of all the incidents involved in the acquisition. of these properties would comprise a separate volume in the published reports, and would merely transplant in the opinion the confusion we find in the record. Thus no beneficial purpose would be served.

The Chancellor found that the property acquired largely was due to the earnings and efforts of Mr. Crawford. The defendant claims that she kept the books and billed the customers of the various ventures in which Mr. Crawford was engaged; that for a short time, she leased and ran a tourist camp at Floyds Fork on the Shelbyville Road; that she equipped and ran the Margo Inn and a gasoline station near the Eight Mile House on the Shelbyville Road; and that the $1,-800.00 she testified she previously had acquired financed these and all of Mr. Crawford's enterprises, and was pyramided by their joint efforts, mostly hers, into the properties now reposing in her name, her's and her husband's jointly, and that of her son Basil Hooper.

The evidence clearly shows that Mrs. Crawford had a great deal to do with the operation of the Margo Inn if, in fact, she was not the sole operator. Except in recent years, practically all of the real estate dealt in by the parties was bought and sold in the name of Mrs. Crawford, and she managed a goodly, if not the major, portions of the financial transactions of the family. On the other hand, it equally is evident that Mr. Crawford over the years labored long and hard in his garage and coal businesses, and from earnings derived from these labors supplied funds to support himself, Mrs. Crawford, and the latter's sons, and purchased properties involved in this suit. These facts emanate clearly from all the detailed testimony in respect to their transactions with third parties and between themselves. Under the circumstances, we believe that the Chancellor was correct in determining that the properties involved were largely acquired with funds earned and contributed by Mr. Crawford. We find also that the Chancellor's judgment was reasonable in determining that Mrs. Crawford's work and contribution to the joint properties were worth $18,-

000.00 of the whole estate which, from the evidence, we value at approximately $50,000.00.

Mrs. Crawford vehemently complains of the judgment insofar as it requires her to restore to the joint estate a tract of land conveyed to them jointly but which Mr. Crawford conveyed to Mrs. Crawford in the year 1927. The ground of this particular complaint is that the transfer was made for the purpose of defrauding creditors of Mr. Crawford and the evidence relied on to show such fraudulent intent is the answer of Mr. Crawford to a question on direct examination. The question and answer are in the following words:

"Q. How did you happen to place the property in her name? A. I had a little trouble with the fellow up the road and he threatened to sue me and she threatened to leave me if I did not put the property in her name so the man could not get any money off of me, nothing would do but I had to convey that property to her so I went down and conveyed it over to her. She would always pick a time I was right busy in the yard and made me do something. This one day I had a big job for a fellow named Tolby and she got on a tantrum and was going to leave if I did not convey this property so the man could not come there and take my home away from me. I thought I would go down and convey it to keep her still."

The first part of the response to the question was a mere recitation of the background. The effect of the entire answer is that Mrs. Crawford was desirous of averting the collection of the possible claim and Mr. Crawford reluctantly yielded to her demands, not for the purpose of defrauding his creditors, but "to keep her still." We find no merit in the contention that Mr. Crawford made the transfer for a fraudulent purpose.

Appellant Hooper complains of the Chancellor's decision that the property placed in his name by Mrs. Crawford was held by him for appellee under a constructive trust. It is shown by uncontradicted evidence that the property was purchased in Basil's name without his knowledge or consent; and that after learning of this purchase Basil attempted to convey the property to his mother, but, before it was lodged for record, Carl Hooper, Basil's brother, destroyed the deed. The testi-

mony concerning the activities of each of the parties in respect to this transaction is conflicting, but the uncontradicted facts as to the manner of purchase, the subsequent handling of the property, and the source of the money used to pay off the note executed to secure the purchase price support the Chancellor's judgment.

We have read the voluminous record and have examined the exhibits in their entirety, and conclude, for the reasons stated, that the judgment should be, and it hereby is, affirmed on both the appeal and cross-appeal.